## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

**GEORGE SHIPMAN, III,**  :  **HABEAS CORPUS**
  **Petitioner,** :  **28 U.S.C. § 2254**
 :
**v.** :
 :
**CLINTON PERRY,** :  **CIVIL ACTION NO.**
  **Respondent.** :  **1:18-CV-0607-TWT-AJB**

## UNITED STATES MAGISTRATE JUDGE'S
## FINAL REPORT AND RECOMMENDATION

Petitioner, George Shipman, III, challenges via 28 U.S.C. § 2254 his 2013 Cobb

County convictions.  The matter is before the Court on the petition, [Doc. 1], and

Respondent's answer-response, [Doc. 6].  For the reasons stated below, the undersigned

recommends that the petition be denied and this action dismissed.

## I.    **Background**

On September 7, 2012, Petitioner, Larry Stallworth, and Tedrick Stallworth

gained entry to the dwelling house of Stephanie Gladden and, among other crimes,

robbed her.  (*See* Pet'r Ex. B at 235-39 [Doc. 1-2 at 240-44].)[1]  Significant to the

---

[1]    Petitioner's Exhibits A through H are located at docket entry one.  (Pet'r Exs. A-H, ECF Nos. 1-1 through 1-9.)  When citing to Petitioner's Exhibit B, which contains the state habeas record, the Court includes in brackets a citation to the Court's electronic docket number and pagination.

grounds raised by Petitioner, (1) Ms. Gladden saw only Petitioner and Larry (whom she did not know) during the commission of the crimes; (2) Tedrick, who was known by Ms. Gladden and who thought that he was owed money by Ms. Gladden and her husband[2] to whom he was related, concealed himself during the crimes; and (3) evidence indicated that Ms. Gladden, her husband, and Tedrick were involved in a drug scheme which appeared to involve the same drug source. (See *id.* at 10-14, 252-55 [Doc. 1-2 at 10-14, 257-60].)

The Cobb County grand jury indicted Petitioner and his co-defendants Larry and Tedrick for (count one) burglary, (count two) armed robbery, (count three) false imprisonment, (count four) kidnaping, and charged Petitioner with (count six) possession of a firearm during the commission of a crime and (count eight) possession of a firearm by a convicted felon, criminal action number 13-9-2271-33. (Pet'r Ex. B at 226, 235-39 [Doc. 1-2 at 231, 240-44].) On November 11, 2013, represented by Scott Semrau, Petitioner pleaded guilty to all counts and received a total forty-year term, with twenty years to be served in confinement. (*Id.* at 226, 229-34 [Doc. 1-2 at 231, 234-39].)

---

[2]   The record sometimes refers to Ms. Gladden's husband as her boyfriend. The Court uses the term husband, used during the plea hearing.

2

The record does not show that Petitioner appealed.  On November 3, 2014, Petitioner filed in the Coffee County Superior Court a state habeas corpus petition, civil action number 2014S11-727.  (Pet'r Ex. A.)  By order filed on August 22, 2016, the state habeas court denied relief.  (Pet'r Ex. C.)  On January 16, 2018, the Georgia Supreme Court denied further review and on February 5, 2018, denied reconsideration. (Pet'r Exs. F, H.)

Petitioner now seeks federal habeas corpus relief on two grounds:  (1) a violation of due process and the right to effective assistance of counsel based on counsel stating that Petitioner was pleading guilty under a party to the crime theory, in contradiction of Petitioner's testimony, and (2) a violation of due process based on prosecutorial misconduct in knowingly relying on false evidence in criminal proceedings.  (Pet'r Mem. at 12, 18-19, ECF No. 1.)

## II.    **Federal Habeas Corpus Standard**

A federal court may issue a writ of habeas corpus on behalf of a person held in custody pursuant to a judgment of a state court if that person is held in violation of his rights under federal law.  28 U.S.C. § 2254(a).  The availability of collateral relief, however, is limited.  A habeas petitioner is presumed guilty, not innocent, *Herrera v. Collins*, 506 U.S. 390, 399-400 (1993), and the petitioner bears the burden of

demonstrating his right to collateral relief, *Blankenship v. Hall*, 542 F.3d 1253, 1274 (11th Cir. 2008). Additionally, the Antiterrorism and Effective Death Penalty Act (AEDPA) requires a petitioner to exhaust his state court remedies and requires federal courts to give deference to state court adjudications. 28 U.S.C. § 2254(b)-(e).

Exhaustion requires a petitioner to "fairly present[] every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review." *Pope v. Sec'y for Dep't of Corr.*, 680 F.3d 1271, 1284 (11th Cir. 2012) (quoting *Mason v. Allen*, 605 F.3d 1114, 1119 (11th Cir. 2010)) (internal quotation marks omitted). If a state prisoner has not properly availed himself of state remedies, federal habeas corpus review of his claims generally is barred (1) if, based on adequate and independent state law, the state court clearly and expressly has found that, because the petitioner failed to follow state rules, state law procedurally bars consideration of a claim, or (2) if a claim has not been raised in state court and it is clear that the state courts would refuse, because of a state procedural bar, to allow any further attempts at exhaustion. *Bailey v. Nagle*, 172 F.3d 1299, 1302-03 (11th Cir. 1999). The federal bar may be overcome if the federal petitioner shows (1) cause for the default and actual prejudice or (2) proof of actual innocence. *Ward v. Hall*, 592 F.3d 1144, 1157 (11th Cir. 2010). "To show cause, the petitioner must demonstrate 'some objective

4

factor external to the defense' that impeded his effort to raise the claim properly in state court" or that the matter was not raised because of ineffective assistance of counsel. *Id.* (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). If a petitioner shows cause, he also must show prejudice – an actual and substantial disadvantage to his defense. *Id.* "To overcome procedural default through a showing of actual innocence, the petitioner must present 'reliable evidence . . . not presented at trial' such that 'it is more likely than not that no reasonable juror would have convicted him of the underlying offense.' " *Rozzelle v. Sec'y, Fla. Dep't of Corr.*, 672 F.3d 1000, 1011 (11th Cir. 2012) (quoting *Johnson v. Alabama*, 256 F.3d 1156, 1171 (11th Cir. 2001)).

For claims that have been exhausted, federal relief under the AEDPA is limited to petitioners who demonstrate that the state court adjudication resulted in a decision that "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States[,]" 28 U.S.C. § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding[,]" 28 U.S.C. § 2254(d)(2).[3] A state court's factual determinations are presumed correct

---

[3]       When the final state habeas decision on the merits is not accompanied by reasons for its decision, "the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale."

AO 72A
(Rev.8/8
2)

unless the petitioner presents clear and convincing evidence that those determinations were erroneous.  28 U.S.C. § 2254(e)(1).

"A state court's adjudication is contrary to federal law if it 'arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts.' "  *Wellons v. Warden*, 695 F.3d 1202, 1206 (11th Cir. 2012) (alterations in original) (quoting *Williams v. Taylor*, 529 U.S. 362, 413 (2000)).  "A state court's adjudication is unreasonable if the state court 'identifies the correct governing legal principle from th[e] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.' "  *Id.* (alteration in original) (quoting *Williams*, 529 U.S. at 413).  To show unreasonableness, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Clark v. Attorney Gen., Fla.*, 821 F.3d 1270, 1282 (11th Cir. 2016) (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)) (internal quotation marks omitted), *cert. denied*, _ U.S. _, 137 S. Ct. 1103 (2017).

---

*Wilson v. Sellers*, _ U.S. _, _, 138 S. Ct. 1188, 1192 (2018).

AO 72A
(Rev.8/8
2)

This Court has reviewed the pleadings and exhibits and finds that the record contains sufficient facts upon which the issues may be resolved.  As Petitioner has made no showing as required by 28 U.S.C. § 2254(e)(2), no federal evidentiary hearing is permitted, and the case is now ready for disposition.

## III.   Discussion

### A.   A Violation of Due Process and Ineffective Assistance of Counsel Based on Counsel Stating that Petitioner was Pleading Guilty Based on Party to a Crime Theory, in Contradiction of Petitioner's Plea Testimony

#### 1.   Additional Background

In the plea agreement on which Petitioner was before the court, the state had agreed to recommend a forty-year sentence, with twenty years to be served.  (*See* Pet'r Ex. B at 247-48, 257 [Doc. 1-2 at 252-53, 262].)   At the plea hearing, the court explained Petitioner's trial rights and the possible punishments, and Petitioner stated that he understood that he was giving up his trial rights, that upon pleading guilty he would be subject to life plus sixty years, and that if he was convicted at trial the court would be bound to sentence him to life for armed robbery, with no possibility of parole until he had served thirty years, and to the maximum terms on his remaining counts.  (*Id*. at 242-47 [Doc. 1-2 at 247-52].)   The court asked Petitioner how he pled, and

7

Petitioner stated, "guilty."  The court asked Petitioner if he was in fact guilty, and

Petitioner stated, "yes, sir."  (*Id.* at 247 [Doc. 1-2 at 252].)  The court asked Petitioner

why he was pleading guilty, and Petitioner responded,

> Because thirty years versus life, it's just a number difference.  That's it.
> Not saying I did it – did any of these.  It's just a number difference is the
> only reason I'm taking the plea.  I got two kids and I can't [sic] thirty
> years, life, I can't do that.  My parents won't be alive.  I couldn't do that.

(*Id.*)  The state then presented the factual basis for the plea as follows –

> The defendant that you are looking at today is the second gunman.  The
> first gunman, the one who initially held the gun to Stephanie Gladden's
> head on September 7th, 2012, was the – I would classify him as the
> primary gunman.  [Petitioner] was the other gunman who also held a gun
> to her.  He is the one who personally carried out the brief kidnapping in
> this case.  And he is the only defendant who was arrested at the scene.

> . . . On September 7th, 2012, Ms. Gladden was at home at about 11:00
> a.m.  Mr. Tedrick Stallworth, the one who's set for trial today, felt that
> Ms. Gladden . . . and her husband owed him money.  So he conducted a
> plan by which they would break into Ms. Gladden's home and rob her.
> [Petitioner] is what the state would classify as one of his recruits.  It was
> his vehicle that they drove to the scene.  They first attempted to gain entry
> in the house by deceiving her into thinking that they were having car
> trouble.  So they parked their car down the road and actually popped the
> hood to pretend that they were having car trouble.

> [Petitioner] and Larry Stallworth, the one that you pled last week,
> went to the door because she doesn't know them.  Mr. Tedrick Stallworth,
> who she knew because he was her fiance's cousin, hid in the car so he
> wouldn't be seen.  When she wouldn't allow them entry she said go over
> to my neighbor's house.  And, Judge, in order to attempt to continue to

8

AO 72A
(Rev.8/8
2)

deceive her, they actually did that.  And she watched them as they walked over to the neighbor's house.

They came back and rang the doorbell again and then pretended that they needed a cell phone charge to attempt to gain entry.  When she again refused, they went around the back of the house to a window that Mr. Tedrick Stallworth, because he was family, knew that that window was always unlocked.  And when Ms. Gladden sat downstairs on the phone, she sees the shadow of a man across the curtain of that window.  She calls 911 because she has an idea of what's about to happen.  And Larry Stallworth, the man who pled guilty last week, jumped in and put a gun to her head.

[Petitioner] was waiting outside of the front door for the first gunman to let him in.  Once they get in they put Ms. Gladden up in the bathroom, which is where the false imprisonment charge comes, so she wouldn't see Tedrick Stallworth, who she knows.  At some point the evidence would show that [Petitioner] did hold the gun to her.  They robbed her.  They took televisions, all sorts of electronics and loaded them into the back of the car.  By [Petitioner's] own statement, he loaded items into the back of the car.

 . . . .When the police come the defendants conspire and make this plan to try to get away.  The plan that they come up with is [Petitioner] is certainly going to kidnap Ms. Gladden.  They told her you need to tell the officers that I'm your cousin and I'm helping you move.  He walks out the door behind her.  Mr. Stallworth, the one who pled last week, went around the corner of the house between the house and a privacy fence where the initial responding officer couldn't see, crouched down on the ground and kept a gun pointed at Ms. Gladden.

Ms. Gladden is being walked out by [Petitioner] while the other defendant is around the corner pointing a gun at them.  Ms. Gladden plays along.  Because one officer is there.  For safety reasons she plays along and says yes, this is my cousin and he's helping me move.  A second

9

> officer comes, knows something is wrong and pulls Ms. Gladden aside.
> And she tells them I don't know this man, I'm being robbed.  And he was
> arrested at the scene.  That's what the evidence would show.

(*Id.* at 252-55 [Doc. 1-2 at 257-60].)

In light of Petitioner's response to the court's question on why he was pleading guilty, i.e., his response that he was pleading guilty in order to avoid a longer sentence and his statement "Not saying I did it – did any of these," the Court questioned counsel on Petitioner's testimony that he was in fact guilty.  (*Id.* at 247, 255 [Doc. 1-2 at 252, 260].)  Counsel responded as follows –

> Well, we're not presenting this as an *Alford* plea.[4]  And for [Petitioner],
> an *Alford* plea is a plea where you maintain your innocence, but plead
> because you believe that it's in your best interest.  My understanding is
> that we're presenting the plea under a party to a crime theory.
>
> I think [Petitioner] would deny that he held or handled a firearm.
> I think [Petitioner] would deny that he engaged in kidnapping.  That being
> said, it appears that Ms. Gladden is prepared to testify that she was forced
> to leave her residence under a false pretense and the facts presented by the
> police officers corroborate that, in other words, if she walked out and said
> [Petitioner] was her cousin.
>
> So even if [Petitioner] didn't force Ms. Gladden into that posture of
> pretending that he's her cousin, even though he didn't have a gun, he
> would still under party to a crime theory be guilty of these offenses as
> well.  So that's my understanding of how we're presenting the plea.

---

[4]      *North Carolina v. Alford*, 400 U.S. 25, 38 n.10 (1970) (allowing in certain circumstances a plea of guilty plea that is coupled with a claim of  innocence).

10

(*Id.* at 255-56 [Doc. 1-2 at 260-61].)  The court stated that it was satisfied and found that there was a factual basis for the plea.  (*Id.* at 256 [Doc. 1-2 at 261].)

After reviewing the recommended sentence, the court told Petitioner that it was planning on accepting the plea and asked whether "[f]or any reason, good or bad, do you wish to change your mind?"  Petitioner stated, "No."  (*Id.* at 260 [Doc. 1-2 at 265].) After additional discussion on the sentence and other matters, the court again asked Petitioner if for any reason he wished to change his mind.  Petitioner asked to talk with counsel, which the court allowed, and subsequently affirmed that he did not wish to withdraw his plea of guilty.  (*Id.* at 264 [Doc. 1-2 at 269].)

Represented by new counsel, Elizabeth Brandenburg, Petitioner filed his state habeas petition in which he raised the following ground for relief: counsel was ineffective for allowing Petitioner to plead guilty under a party to the crime theory, which contradicted Petitioner's testimony at the plea hearing, and the court erred in accepting his guilty plea.  (Pet'r Ex. A, Statement of Claims.)

At the state habeas hearing, Petitioner testified (1) that he pleaded guilty to avoid the recidivist punishment that he would face if convicted at trial and because he thought that the victim would be allowed to lie on the stand and (2) that he would have gone to

11

trial if he had confidence that the victim would not have been allowed to lie. (Pet'r Ex. B at 56 [Doc. 1-2 at 56].)

The state habeas court found that Petitioner's attempt – to show that plea counsel was unreasonable for allowing him to plead guilty as a party to a crime – failed for the following reasons: (1) any conflict between Petitioner's affirmation of guilt and his comment on why he was pleading guilty had been sufficiently resolved;[5] (2) the factual basis for the plea showed that Petitioner had driven the vehicle used in the crimes, that one of Petitioner's co-indictees had a gun, and that Petitioner assisted or helped his co-indictees and was not merely present at the scene; and (3) Petitioner had presented nothing to show that counsel's understanding of those facts was incorrect. (Pet'r Ex. C at 10-12.) The state habeas court further found that Petitioner had failed to establish prejudice by demonstrating that, but for counsel's alleged deficient representation, he would not have pleaded guilty but would have gone to trial. (*Id.* at 15.)

---

[5]   The state habeas court found that the plea hearing showed that Petitioner had affirmed his guilt, that Petitioner's comment on why he was pleading guilty stopped short of affirmatively stating that he did not commit the crimes with which he was charged, and that "Petitioner's statement about why he was pleading guilty, along with plea counsel's explanation to the court that he believed Petitioner could be found guilty under a party to a crime theory, sufficiently resolved any conflict for the court between the plea and the purported claim of innocence." (Pet'r Ex. C at 11, 18.)

12

### 2. <u>Due Process and Ineffective Assistance of Counsel</u>

In this Court, Petitioner argues that his due process rights and right to effective assistance of counsel were violated when plea counsel stated that he was pleading guilty based on party to a crime theory, in contradiction of Petitioner's plea testimony. (Pet'r Mem. at 12.) Petitioner asserts that he did not know that party to a crime meant more than mere presence and that, had he known it meant more than mere presence and that he was admitting guilt, he would not have pleaded guilty. (*Id*. at 13-14.) Petitioner states that he was "willing to enter a plea in order to avoid a 30 year to life sentence, but he was not willing to admit that he had committed a crime"; that he "would have entered a plea for a lesser sentence, but only if it did not involve falsely admitting guilt"; and that he "was only knowingly and voluntarily agreeing to enter a plea where he could maintain his innocence." (*Id.* at 12, 16.) Petitioner asserts that counsel's unauthorized admission of guilt, when he had wished to maintain his innocence, was ineffective and rendered his guilty plea invalid. (*Id.* at 17-18.)

Respondent argues that this Court should defer to the state habeas court's decision. (Resp't Br. at 3, 8-13, ECF No. 6-1.)

Under the Due Process Clause of the Fourteenth Amendment, a state criminal defendant possesses a Sixth Amendment right to "reasonably effective" legal

13

assistance. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Faretta v. California*, 422 U.S. 806, 818 (1975). To show constitutionally ineffective assistance of counsel, a petitioner must establish that (1) counsel's representation was deficient and (2) counsel's deficient representation prejudiced him. *Strickland*, 466 U.S. at 690-92.

To succeed on a claim that a guilty plea was obtained in violation of the Sixth Amendment right to counsel, a movant must show that "(1) counsel's advice was deficient; and (2) 'but for counsel's errors, [there is a reasonable probability that] he would not have pleaded guilty and would have insisted on going to trial.' " *Lynch v. Sec'y, Fla. Dep't of Corr.*, 776 F.3d 1209, 1218 (11th Cir. 2015) (quoting *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985)), *cert. denied*, _ U.S. _, 136 S. Ct. 798 (2016). A movant's "bare allegation that he would not have pleaded guilty is insufficient to establish prejudice[.]" *Roach v. Roberts*, 373 Fed. Appx. 983, 985 (11th Cir. Apr. 20, 2010). "[A] petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances." *Diveroli v. United States*, 803 F.3d 1258, 1263 (11th Cir. 2015) (quoting *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010)) (internal quotation marks omitted).

The Court cannot find that the state habeas court was unreasonable in finding that Petitioner failed to meet his burden of demonstrating that plea counsel was ineffective.

14

Even if this Court disagreed with the state habeas court's conclusion that Petitioner did not make a protestation of innocence, under AEDPA's deferential standard it would nonetheless be reasonable for a court to conclude, as the state habeas court did, (1) that any conflict between Petitioner's affirmation of guilt and his comment on why he was pleading guilty had been sufficiently resolved and (2) that Petitioner was pleading guilty as a party to a crime, as stated by counsel.  This is so, particularly based on Petitioner's two affirmations to the court, after the party-to-a-crime discussion, that he did not wish to change his mind on pleading guilty.  The factual proffer showed that Tedrick recruited Petitioner to participate in the robbery and that Petitioner drove the vehicle used in the crimes, parked the car down the street from the victim's home in an attempt to make it appear that they were having car trouble, went to the victim's door to gain entry under false pretenses, entered the victim's home when let in by the gunman who gained entry through a window, participated in loading the victim's belongings into their vehicle, and walked the victim out of the house (while a co-defendant held a gun on her) so that the victim could tell the police (as instructed by defendants) that the men were simply helping her move.  The factual proffer shows that Petitioner assisted or helped his co-defendants and that he was not merely present at the scene.

15

AO 72A
(Rev.8/8
2)

Further, Petitioner does not show prejudice based on counsel's handling of the court's question on his admission of guilt.  At his habeas hearing, Petitioner did not testify that, if he had understood that pleading guilty as party to a crime was an admission guilt, he would have rejected the state's offer (with a recommendation that he serve only twenty years) and insisted on going to trial and risk exposure to a mandatory life term of imprisonment, with no possibility of parole until he had served thirty years.  Although Petitioner testified at the habeas hearing that he would have gone to trial if he had been assured that the victim would not lie, he nowhere testified that his understanding of his guilt based on party to a crime influenced his decision to plead guilty.[6]

_____

[6]    Additionally, it appears that the record would support an *Alford* plea, and Petitioner has admitted that he would not challenge his guilty plea if it had been entered under *Alford*.  (*See* Pet'r Mem. at 16.)  The Georgia Supreme Court has found no error when the trial court accepted a felony-murder guilty plea, which was not taken under *Alford* even though the defendant had protested that the shooting was accidental. *McKiernan v. State*, 288 Ga. 140, 142-43, 702 S. E.2d 170, 172 (2010).  The Georgia Supreme Court concluded that, although the plea was not taken under *Alford*, *Alford* would have been satisfied when the record showed that defendant was aware of the rights that he was waiving by pleading guilty and aware of the sentence that he faced and showed that he "was motivated to plead guilty because he thought it would be in his best interests to avoid trial and a potentially longer sentence." *McKiernan*, 288 Ga. at 142-43, 702 S. E.2d at 172.

AO 72A
(Rev.8/8
2)

### 3.  **Structural Error**

As part of ground one of his federal petition, Petitioner also asserts that counsel deprived him of his fundamental right to admit or not admit guilt, which he claims is a structural error.  (Pet'r Mem. at 16-18.)  Petitioner argues that "it is '[t]he defendant, and not his lawyer or the State, who will bear the personal consequences of a conviction,' *Faretta*, 422 U.S. at 834, and it is therefore the accused who must have the ultimate authority to decide whether to admit guilt." (*Id.* at 18.)  In support, Petitioner also cites to a legal discussion on the oral argument in a case involving counsel's concession of his client's guilt which, at the time, was pending in the United States Supreme Court.  (*Id.* at 17); *see McCoy v. Louisiana*, _ U.S. _, _, 138 S. Ct. 1500 (2018).  Petitioner suggests that the Justices' might ultimately decide the issue in a manner that would favorably impact Petitioner's case.  (*Id.* at 17.)

 The United States Supreme Court decided *McCoy* on May 14, 2018 and held that it is unconstitutional and a structural error, requiring no showing of prejudice, for defense counsel to concede guilt over a defendant's "intransigent and unambiguous objection" to doing so.  *McCoy*, _ U.S. at _, 138 S. Ct. at 1507, 1511.

To the extent that Petitioner intended to raise a claim based on a fundamental right and structural error that is distinct from his ineffective assistance of counsel claim

AO 72A
(Rev.8/8
2)

in ground one, he did not raise such claim in the state habeas court although *Faretta* and the pending application for *certiorari* in *McCoy* were available at the time.[7] Accordingly, it is procedurally defaulted, and Petitioner does not demonstrate cause[8] and actual prejudice or demonstrate actual innocence in order to overcome his default. For all the reasons stated above, Petitioner's federal ground one fails.

---

[7]     Petitioner, in seeking reconsideration of the Georgia Supreme Court's denial of further review of his state petition, raised the pending *McCoy* case but did not clearly raise an argument on fundamental structural error.  (Pet'r Ex. G at 2-4, ECF No. 1-7.)

[8]     The fact that *McCoy* was not decided until May 2018 does not provide cause.  The application for *certiorari* in *McCoy* – which delineated the issue of whether it was unconstitutional for defense counsel to concede guilt over a defendant's express objection – was filed on March 6, 2017, while Petitioner's state habeas proceedings were still pending.  *See* Pet. for *Certiorari* at 14-25, *McCoy*, _ U.S. _, 138 S. Ct. 1500, 2017 WL 4310769.  Thus, the same pre-decision presentation of the issue was available when Petitioner filed his federal petition as when his state habeas proceedings were still pending.

**B.**   **A Violation of Due Process Based on Prosecutorial Misconduct in Knowingly Relying on False Evidence in Criminal Proceedings**

In his state petition, Petitioner asserted prosecutorial misconduct for knowingly relying on perjured testimony by the victim, based on which his guilty plea was invalid, and ineffective assistance of counsel for failing to bring the perjury to the court's attention and allowing Petitioner to plead guilty knowing that the testimony would be presented at trial.  (Pet'r Ex. A, Mem. at 12-15.)

At the state habeas hearing, Petitioner's plea counsel testified that Ms. Gladden's husband was a known drug dealer, that he had investigated Ms. Gladden, that his investigation showed that Ms. Gladden was suspected in a drug scheme in which Tedrick also was involved, that he shared the information with the state prosecutor, and that he learned after the guilty plea that there also was a DEA investigation that involved Ms. Gladden.  (Pet'r Ex. B at 10-14 [Doc. 1-2 at 10-14].)  Plea counsel testified that in his opinion the prosecution should have done more with the information that he had provided on Ms. Gladden and should have discovered the DEA investigation, which would have provided more information on which Petitioner could have based his plea decision.  (*Id.* at 33-34 [Doc. 1-2 at 33-34].)[9]  Plea counsel testified

---

[9]       Plea counsel stated that the prosecution "knew or at least should have inquired that there was an ongoing DEA investigation . . . ."  (Pet'r Ex. B at 34 [Doc. 1-

19

that he informed Petitioner of the evidence he had obtained on Ms. Gladden and that

he would confront her with it at trial.  (*Id.* at 30-31 [Doc. 1-2 at 30-31].)  Plea counsel

stated, "had we gone to . . . trial the defense would have been that [Ms.] Gladden was

lying about the robbery, the kidnapping, because she owed property to these defendants

and was – she was a drug dealer and the property that was in the vehicle was property

that rightly belonged to them.  And they were simply getting their property but she

didn't want to give it up."[10]  (*Id.* at 35-36 [Doc. 1-2 at 35-36].)  Plea counsel stated that,

although the victim claimed it was an armed robbery, "it's her moaning about losing

---

2 at 34].)  Petitioner, through counsel, later clarified that they had no information that
the prosecution "actually had [withheld] evidence" and that they were not asserting
such.  (*Id.* at 59 [1-2 at 59].)

[10]     The factual proffer at the guilty plea hearing agrees that Tedrick believed
that Ms. Gladden and her husband owed him money.  (Pet'r Ex. B at 252 [1-2 at 257].)
As to the explanation that they were simply getting their property, Petitioner does not
explain why such explanation was not given to the police and why they instead told the
police that they were relatives who were helping the victim move.  (*See* Pet'r Ex. B
at 35-36, 254 [Doc. 1-2 at 35-36, 259].)

AO 72A
(Rev.8/8
2)

her property [because she] didn't want to pay somebody what she owed them."[11]
(*Id*. at 36 [Doc. 1-2 at 36].)

Jon David Haskin, counsel for Tedrick, testified that Petitioner's counsel had taken the lead on motions, which had included extensive argument on Ms. Gladden's connection to a drug scheme, and that the court was aware of the issue.[12]  (*Id.* at 46 [Doc. 1-2 at 46].)  As indicated earlier, Petitioner testified that one of the reasons he pleaded guilty was because he thought that the victim would be allowed to lie on the stand and that he would have gone to trial if he had confidence that the victim would not have been allowed to lie.  (*Id.* at 56 [Doc. 1-2 at 56].)

_____

[11]     Notably, an intent to collect debt is not a defense to robbery.  *Moyers v. State*, 186 Ga. 446, 455-56, 197 S.E. 846, 851 (1938) ("Wherefore we hold the violent taking of money or property from the person of another by force or intimidation, without the consent of the owner, for the purpose of converting the same to the use of the taker for the payment of a demand claimed to be due him by one from whom the money or property is so taken, constitutes the offense of robbery.  And that he cannot under such circumstances justify the taking and be excused of the offense of robbery on the ground that the person from whom the money or property was so taken was indebted to him, and that the taking was to pay the debt.").

[12]     At the plea hearing, the court referred to such motions when she informed Petitioner that they had gone through more than one day of motions and that two motions remained and asked him if he understood that if he pleaded guilty those remaining motions would not be heard.  (Pet'r Ex. B at 250-51 [Doc. 1-2 at 255-56].)

Before the close of the hearing, counsel for the prosecution stated that she understood that Petitioner was not asserting prosecutorial misconduct as a claim that the prosecution had actually withheld evidence but as a claim that the prosecution "should have investigated this claim against the [victim] further." (*Id.* at 59 [Doc. 1-2 at 59].)  Petitioner's counsel clarified, "I don't have any information that the District Attorney . . . was withholding evidence.  We did not raise a *Brady*[13] claim . . . ." (*Id.*)

The prosecutor testified by deposition that it is not the practice of her office to investigate victims; that Petitioner's counsel was actively involved in investigating the victim in regard to her involvement in a drug scheme and in bringing it to the prosecution's attention; that after being made aware of the issue, she questioned the victim before the motions date (before Petitioner pleaded guilty) and that the victim denied any involvement in a drug scheme; and that it was not until after the hung jury in Tedrick's case that the victim admitted being involved in a drug scheme. (*Id.* at 283-85, 289-91, 297, 299-300, 307-09, 311-12 [Doc. 1-2 at 288-90, 294-96, 302, 304-05, 312-14, 316-17].)

---

[13]     *Brady v. Maryland*, 373 U.S. 83, 87 (1963) ("[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process [in regard to a fair trial] where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.").

22

The state habeas court, relying on *Tollett v. Henderson*, 411 U.S. 258 (1973), among other cases, found that Petitioner's prosecutorial misconduct claim was waived by entry of the guilty plea, which could only be attacked based on ineffective assistance of counsel, and that Petitioner had shown no viable prosecutorial misconduct claim on which plea counsel was ineffective. (Pet'r Ex. C at 12-15, 19-20.)

In his federal petition, Petitioner again asserts that his due process rights were violated by prosecutorial misconduct in knowingly relying on false evidence in criminal proceedings. (Pet'r Mem. at 18-19.)[14] Petitioner argues that the prosecution was aware of potentially impeaching evidence against the victim, did not adequately consider it and determine that the victim was not being truthful about her involvement in a drug scheme, and placed Petitioner "in a position of having to decide whether to go to trial with this helpful information that the State refused to acknowledge." (*Id.* at 19-23.) Petitioner states that plea counsel attempted to bring the issue to the court's attention, (*id.* at 24), and asserts that the information was important because it "would have shown that [the victim] was lying about the robbery because she owed property to the

---

[14] Petitioner, who is counseled, does not reassert the claim raised in his state petition, that plea counsel was ineffective for failing to bring to the court's attention information about the victim's involvement in a drug scheme and advising him to plead guilty knowing that the victim might lie at trial in regard to her involvement in a drug scheme. (*See* Pet'r Mem. at 18-19.) Those claims therefore are not addressed.

defendants in their capacity as cohorts in the drug business."[15]  (*Id.*)  Petitioner asserts that he was "forced to choose between taking a case to trial and facing [the victim's] perjured testimony and denial of his due process rights, or taking a plea, an impossible decision rendering his plea unknowing and involuntary."  (*Id.*)  Petitioner does not address the state habeas court's finding that his guilty plea waived his claim of prosecutorial misconduct.

Respondent argues that the court should (1) find that Petitioner's claim of prosecutorial misconduct fails because it was waived by his guilty plea and (2) reject as procedurally defaulted, or defer to the state habeas court's implicit denial of, any claim that prosecutorial misconduct rendered his guilty plea invalid.  (Resp't Br. at 13-20.)

A valid guilty plea "forecloses independent inquiry" into a constitutional claim based on pre-plea prosecutorial conduct related to the petitioner's case.  *Tollett*,

---

[15]     Even if evidence shows that Ms. Gladden was involved in a drug scheme with Tedrick and that she and her husband owed Tedrick money, Petitioner points to nothing that plausibly suggests the victim was lying when she called 911 to report the attempts to gain entry to her home by men whom she did not know or that she was lying about the crimes committed against her when Petitioner and Larry Stallworth broke into her home and began loading her belongings into their vehicle.  Thus, the prosecutorial misconduct claim is limited to victim impeachment evidence on the victim's involvement in a drug scheme.

411 U.S. at 266; *see also Class v. United States*, _ U.S. _, _, 138 S. Ct. 798, 805 (2018) ("A valid guilty plea . . . renders irrelevant . . . the constitutionality of case-related government conduct that takes place before the plea is entered."); *Wilson v. United States*, 962 F.2d 996, 997 (11th Cir. 1992) ("A defendant who enters a plea of guilty waives all nonjurisdictional challenges to the constitutionality of the conviction, and only an attack on the voluntary and knowing nature of the plea can be sustained.").

> We hold that after a criminal defendant pleads guilty, on the advice of counsel, he is not automatically entitled to federal collateral relief on proof [of a pre-plea constitutional violation[16]]. The focus of federal habeas inquiry is the nature of the advice and the voluntariness of the plea, not the existence as such of an antecedent constitutional infirmity. A state prisoner must, of course, prove that some constitutional infirmity occurred in the proceedings. But the inquiry does not end at that point . . . If a prisoner pleads guilty on the advice of counsel, he must demonstrate that the advice was not 'within the range of competence demanded of attorneys in criminal cases,' *McMann v. Richardson*, [397 U.S. 759, 771 (1970)]. Counsel's failure to evaluate properly facts giving rise to a constitutional claim, or his failure properly to inform himself of facts that would have shown the existence of a constitutional claim, might in particular fact situations meet this standard of proof. Thus, while claims of prior constitutional deprivation may play a part in evaluating the advice rendered by counsel, they are not themselves independent grounds for federal collateral relief.

> . . . . When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he

---

[16]    *Tollett* involved post-plea "proof that the indicting grand jury was unconstitutionally selected." *Tollett*, 411 U.S. at 266.

25

> may not thereafter raise independent claims relating to the deprivation of
> constitutional rights that occurred prior to the entry of the guilty plea. He
> may only attack the voluntary and intelligent character of the guilty plea
> by showing that the advice he received from counsel was not within the
> standards [required of counsel].

*Tollett*, 411 U.S. at 266-67.

"A defendant is not entitled to withdraw his plea merely because he discovers long after the plea has been accepted that his calculus misapprehended the quality of the State's case . . . ." *Brady v. United States*, 397 U.S. 742, 757 (1970). In the absence of misrepresentation or other impermissible conduct by a state agent, a guilty plea does not become vulnerable based on a defendant's misapprehension of the State's case. *Id*. at 755, 757 ("(A) plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e.g. bribes)." (citation and internal quotation marks omitted)). Although prosecutorial misconduct might, in certain circumstances, affect the validity of a guilty plea, the prosecution's failure to disclose material impeachment evidence prior to entry of a plea does not qualify as

26

prosecutorial misconduct.  *See United States v. Ruiz*, 536 U.S. 622, 633 (2002) ("[T]he Constitution does not require the Government to disclose material impeachment evidence prior to entering a plea agreement with a criminal defendant.").

> [I]mpeachment information is special in relation to the fairness of a trial, not in respect to whether a plea is voluntary ("knowing," "intelligent," and "sufficient[ly] aware").  Of course, the more information the defendant has, the more aware he is of the likely consequences of a plea, waiver, or decision, and the wiser that decision will likely be.  But the Constitution does not require the prosecutor to share all useful information with the defendant.

*Id.* at 629; *see United States v. Johnson*, 603 Fed. Appx. 867, 872 (11th Cir. Mar. 12, 2015) ("The Constitution requires only that a guilty plea be knowing and voluntary; not that it be fully informed." (citing *Ruiz*, 536 U.S. at 629)); *Davidson v. United States*, 138 Fed. Appx. 238, 239 (11th Cir. June 24, 2005) ("[T]he Supreme Court has held that there is no constitutional requirement for the government to disclose impeachment evidence in advance of a guilty plea."  (citing *Ruiz*, 536 U.S. at 629 )).

Here, Petitioner does not address the state habeas court's decision that his guilty plea waived his prosecutorial misconduct claim, much less show that the state habeas court unreasonably applied federal law, as it is his burden to do.  The undersigned finds nothing unreasonable in a determination that Petitioner's guilty plea forecloses review of his prosecutorial misconduct claim.  Further, there is simply no viable claim of

AO 72A
(Rev.8/8
2)

prosecutorial misconduct based on the prosecutor's hesitance in believing the impeachment evidence discovered by defense counsel and her failure to investigate and discover additional victim impeachment evidence, thus pressuring Petitioner to make a plea decision without the additional impeachment evidence based on the DEA investigation. *See Ruiz*, 536 U.S. at 629. Ground Two fails.

## IV.   <u>Certificate of Appealability ("COA")</u>

Under Rule 11 of the Rules Governing § 2254 Cases, "[t]he district court must issue or deny a certificate of appealability When it enters a final order adverse to the applicant. . . . If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." The Court will issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The applicant "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Melton v. Sec'y, Fla. Dep't of Corr.*, 778 F.3d 1234, 1236 (11th Cir. 2015) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)) (internal quotation marks omitted).

> When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, the prisoner in order to obtain a COA, still must show both (1) "that jurists of

28

> reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right" and (2) "that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."

*Lambrix v. Sec'y, DOC*, 872 F.3d 1170, 1179 (11th Cir.) (quoting *Slack*, 529 U.S. at 484), *cert. denied, Lambrix v. Jones*, _ U.S. _, 138 S. Ct. 312 (2017).

The undersigned recommends that a COA be denied because it is not reasonably debatable that Petitioner fails to show that he is entitled to federal relief on either of his federal grounds.  If the Court adopts this recommendation and denies a COA, Petitioner is advised that he "may not appeal the denial but may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22."  Rule 11(a), Rules Governing § 2254 Cases in the United States District Courts.

## V.    <u>Conclusion</u>

For the reasons stated above,

It is **RECOMMENDED** that the instant petition for a writ of habeas corpus, [Doc. 1], and a COA be **DENIED** and that the instant action be **DISMISSED**.

The Clerk is **DIRECTED** to withdraw the reference to the Magistrate Judge.

29

AO 72A
(Rev.8/8
2)

**IT IS SO RECOMMENDED and DIRECTED**, this 1st day of July, 2018.

_____
ALAN J. BAVERMAN
UNITED STATES MAGISTRATE JUDGE

30